JOHNSON *versus* HALE.

3sp 331
138  314

1. The Supreme court will not presume, that an appeal on a judgment in attachment, has been taken after *five* days, merely on it appearing that the appeal bond, is dated after the expiration of such period.

2. *Semble*—that if an appeal be prayed within five days after the rendition of a judgment, the bond may be executed any time before issuance of execution.

3. A party proceeding in attachment, must confine himself, in his affidavit, to some *one* of the distinct grounds on which the process is authorised, by statute, to issue; and if the affidavit states several grounds, in the disjunctive, the process will be quashed.

4. So, an affidavit, (in suing out an attachment,) that the defendant has "removed or absconded," is defective, and will vitiate the proceedings—and the liberal construction given to the attachment laws, under the act of 1828,* will not aid such a defect.

In error from Madison County court.

This was a proceeding under attachment, before a justice of the peace of Madison county; and a judgment was there had against the defendant in error.

On appeal to the county court, the proceeding was quashed; on the ground that the *affidavit*, on which the process had issued, was in the disjunctive, averring that the defendant had " removed *or* absconded," &c.

On error to this court, the plaintiff insisted on a reversal of the decision of the court below, on the grounds, first, that the *affidavit* was sufficient: second, that the appeal had been improperly granted. And on this ground, he showed by the record, that

---

*See Aikin's Digest, page 42, §. 17

the appeal bond was dated six days after the judgment was rendered : which, he contended, was a presumption that the appeal had not been had within the *five* days, as authorised by the statute.

S. *Parsons,* for plaintiff.

LIPSCOMB, C. J.—This action was commenced by an original attachment, before a justice of the peace. . The justice gave judgment in favor of the plaintiff, for fifteen dollars, from which an appeal was taken to the County court, and the attachment was there quashed.

From the record it appears that the attachment was sued out, on the affidavit of the plaintiff, to the debt, and that the defendant ·had "removed or absconded, so that the ordinary process of the law could not be served on him."

The judgment was rendered by the justice of the peace, on the 21st February, 1830, and the record shows that the defendant prayed for, and obtained an appeal to the next County court.

There is nothing to show that the appeal was allowed on a day different from the one on which the judgment was rendered, only that the appeal bond, bears date the 27th of the same month.

In the county court, the defendant moved to quash the attachment, and the plaintiff moved to dismiss the appeal on the ground that it had been taken after the time limited by law. The court refused to dismiss the appeal, but quashed the attachment.

It is now assigned for error—

1. That the court erred in refusing to dismiss the appeal on the plaintiff's motion : and

2. In quashing the attachment on the defendant's motion.

The act of 1814, is relied on by the plaintiff, in support of the first assignment of error. It provides, that "any person aggrieved by the judgment of any justice of the peace, or of the quorum, may, within five days therefrom, appeal to the next term of the superior court for the county, and a subsequent statute directs, that the appeal may be taken to either the county or circuit court.

The law does not direct at what time the bond shall be given; indeed, it does not, in express terms, require the appellant to give a bond at all. It is, however, to be inferred, that he should give such bond, from the subsequent part of the act, in directing the duty of the justice, requiring him to send up the bond, together with the other papers in the case, to the court to which the appeal is taken. ³Toul.Dig. 511.

There seems to be no discretion left to the justice of the peace, as to the time when an appeal may be granted. If not claimed within five days, he has no authority to grant it, and if he should do so, the appeal should be dismissed, on its appearing to the court, to which the appeal has been taken. But, are we to infer, that the appeal in this case, was taken after the lapse of five days from the date of the judgment? The date of the bond is the only evidence, disclosed by the record, that would create such a presumption; and, if the law required in express terms, that the bond should be given at the time the appeal was prayed, I do not think that the inference is unavoidable, that, as the bond bears date six days after the rendition of the judgment, that it was given after the expiration of five days. It would be easy for a

mistake to have intervened as to the day of the month, and such mistake would not invalidate the bond.— The difference is only one day, and it would be presuming on a common and ordinary thing, to suppose the magistrate had been either mistaken in the day of the month, that the judgment was rendered, or the true date when the bond was executed. The justices of the peace are a very useful body of men, but they are sometimes extremely illiterate, and they have been always considered as entitled to a great deal of indulgence. My conclusion, from the record, would be, that the appeal was prayed and the bond executed within the five days, notwithstanding the dates; and that the justice counted the intervening days, without much regard to the dates. I, however, am of the opinion, that, if the appeal was prayed for within five days, and the bond executed at any time before the issuance of an execution, that it would be in time, and sufficient; and that the county court did not err in overruling plaintiff's motion to dismiss the appeal.

We will next inquire, if the court erred in quashing the attachment, on the defendant's motion.

Before the passage of the act of 1823, it was, undoubtedly the duty of the court, to quash an attachment, if the plaintiff had not brought himself strictly, by his affidavit, within the provisions of the law, authorising a process by attachment, against his debtor. He would have been required to swear to some one of the grounds, on which an attachment could issue. That "the defendant absconds, or secretes himself;" that, "he actually resides out of the State;" that, "he is about to remove himself, or effects, out of the State—so that the ordinary process of the law cannot

be served on him." Some one of these grounds
should be sworn to, before the plaintiff could resort
to this extraordinary remedy. If he embrace two of
these distinct grounds, in the alternative, it would
vitiate the affidavit, and be fatal to the action of at-
tachment.[a]

There is no difficulty, in drawing the boundary
of distinction, between these several grounds of an
attachment, " absconds, or secretes," from the diffi-
culty of determining which, forms but one ground;
and the disjunctive conjunction, " or," does not, in
this instance, render the affidavit uncertain, each of
the others, has a clear and distinct meaning of itself;
and to swear, that the defendant actually resided out
of the State, or was about to remove, would be too
uncertain—and, therefore, bad. And, in like man-
ner, the coupling any two distinct grounds, would
also be bad.

The affidavit, in this case, is, that " the defendant
has removed, or absconded, so that the ordinary pro-
cess of the law, cannot be served on him." He
does not swear, that the defendant has removed
out of the State; and, in this, he subjects his affida-
vit to two objections. For ought that we know, the
defendant had only removed from the neighborhood,
or into an adjoining county, without leaving the
State; and the process of original attachment could
not run against his property. And, again, the affida-
vit is double, and in the alternative—directly in con-
flict with the principles above laid down.

We will now inquire, whether this affidavit can
be supported, by the more liberal construction guar-
anteed to the attachment laws, by the act of 1828.
This act requires, that the plaintiff should swear,

[a] Miner's R 14; 2 Hen. & Munf'd 315

that the defendant "absconds or secretes himself," or, that "he resides out of this State," or, that "he is about to remove out of this State, so that the ordinary process of the law cannot be served:" or, that he is about to remove his property out of the State, and, that, thereby, the plaintiff will, probably lose his debt, or have to sue for it, in another State."

Let us analyse and separate these several causes, for which an attachment may issue, and they will stand thus.—"Absconds, or secretes," would be the first. "That he resides out of the State," would be the second.—That "he is about to remove out of the State," would be the third.—That "he is about to remove his property out of the State," would be the fourth.

The 7th section of this act provides, that the several acts of this State, in relation to attachments, shall not be rigidly and strictly construed. Before the enactment of this statute, the rule for the construction of penal statutes, had been uniformly applied to the attachment laws. And such was the severity of the rule, that even defects in form, were held to be fatal to the attachment, if brought to the view of the court. This was the uniform practice of the courts of this State. The remedy provided is an extraordinary one. It is a great inovation on the common law, and it is *exparte.* On these considerations, was the rigid rule of construction we have just mentioned, based. By the 7th section of the act it is seen that a liberal construction must now obtain. By a liberal construction, defects in form, I should presume, were intended to be cured, if amended in time. I cannot believe that it was intended to push this liberality of construction so as to over ride de-

fects of substance.   I think that the last branch of the 8th section of the act, explains how far we are to carry the rule intended to be inculcated by the 7th section : it provides that defects of form, in the original papers, may be amended, on its appearing to the court, or to the justice of the peace, before which such attachment shall be returned, that such defect was not made for the purpose of defrauding the defendant.

I do not believe the affidavit, in the case before us, can be sustained by the last mentioned statute with all its qualifications, any more than by the former law; it does not conform to either, and is deficient in substance.   It is so uncertain, that a conviction for perjury could not be sustained on it, however corruptly the plaintiff may have sworn.   It is in the alternative, and has coupled one ground unknown to either of the attachment laws, with a cause, that would be sufficient of itself, if sworn to positively, and unconnected with any other, excepting secrets, making " absconds or secretes himself."   We, therefore, believe the affidavit was bad, and that there is no error in quashing the attachment.

Judgment affirmed.